No. 16.—Baker & Wilcox, plaintiff in error, *vs.* William Wimpee, defendant in error.

[1.] Land was bound by a mortgage, and by several general judgments younger than the mortgage. The land was worth much less than the amount of the mortgage, The mortgage was not foreclosed. The land was levied on by a *fi. fa.* from one of the judgments. On the day of sale, the mortgagor and the mortgagees agreed that the land should be sold free from the encumbrance

of the mortgage, and that the lien of the mortgage should be transferred to the money. This agreement was published at the time when the land was offered for sale. The land was then sold, and it brought its full value. *Held*, That the agreement was valid.

[2.] To deprive mortgagees of the priority thus acquired, the other creditors must show clearly a superior equity.

Rule against Sheriff, from Floyd Superior Court. Decision by Judge BROWN, at February Term, 1857.

Baker & Wilcox, recovered judgment against William Wimpee surviving partner of the firm of William Wimpee & Co., which company was composed of said Wimpee and *William T. Price.* The judgment bears date 2d June, 1854, and upon which execution issued.

There was a mortgage existing on certain property, executed by said Wimpee, in favor of Mitchell & Price, administrators of said William T. Price, deceased, older than the Baker & Wilcox judgment, but not foreclosed.

The Sheriff, Thomas S. Price, levied upon the mortgaged property, under and by virtue of an execution in favor of Luther Roll, against William Wimpee survivor, and the administrators of the deceased partner, said William T. Price, which execution was younger than either the mortgage or the judgment of Baker & Wilcox. At the sale, the existence of the mortgage was known, and that it was to secure an amount largely more than the value of the property levied on, and if the property was sold subject to the mortgage, that it would bring little or nothing. Mr. Mitchell stated these facts at the time of sale, and waived the lien of the mortgage, and that the mortgagees would claim the money from the sale of the property by the Sheriff, and Wimpee assented to this arrangement, and no one objected. The sale went on, and the property was sold for $2,908 83.

The mortgage was made, in part, to save the estate of William T. Price harmless from the debts of William Wimpee & Co., a firm composed of said Wimpee and William T. Price. Those debts amounted to over $5,000; and the debt

on which the *fi. fa.* of Baker & Wilcox was founded, was one of them.

It also further appeared that there was a bill in equity pending, filed by Mitchell & Price, administrators of William T. Price, deceased, against William Wimpee and Thomas S. Price, Sheriff, in which an injunction had issued, restraining said Sheriff from paying out the money derived from the sale aforesaid; but Baker & Wilcox are not parties to said bill.

Under this state of facts, Baker & Wilcox moved for a rule against the Sheriff, to show cause instanter, why he should not pay the principal, interest and cost of their *fi. fa.*

The Sheriff answered that he brings into Court the sum of $2,908 83, raised upon *fi. fas.* of Luther Roll vs. William Wimpee, Mitchell & Price, administrators, &c., and John B. Winfrey vs. Wimpee, and to be applied as the Court should order, in view of the foregoing facts.

The Court refused the order directing the Sheriff to pay and satisfy the judgment of Baker & Wilcox out of the funds in his hands, and to this refusal, counsel for Baker & Wilcox excepted, and tender their bill of exceptions.

PRINTUP, for plaintiffs in error.

UNDERWOOD, for defendants in error.

*By the Court.*—BENNING J. delivering the opinion.

Was it the Baker & Wilcox *fi. fa.*, or the mortgage, that had the superior title to the money?

If the agreement between the mortgagor and the mortgagees, was valid, the mortgage acquired a lien on the money corresponding in all respects to its antecedent lien on the land. And its antecedent lien on the land was superior to the lien on the land of the judgment on which the *fi. fa.* was founded.

And the agreement was valid; for it was one that could not affect the rights of any person but the parties to it: The

amount of the mortgage almost doubled the value of the property.

But even if this had not been so: even if the value of the property had exceeded the amount of the mortgage, still the agreement could not have affected the rights of the owners of the *fi. fa.*, for in that case the only effect the agreement could have had, must have been, to make the property sell for its full value; but if the property had sold for its full value, it would have sold for money enough to satisfy the mortgage, and leave a balance; and this balance would have been all that the *fi. fa.* would have been entitled to; and this it could have got, notwithstanding the agreement.

The effect of this agreement was in fact, to make the property bring its full value.

[1.] We think that the agreement was a valid one.

If the agreement was valid, its effect must have been, to make the mortgage and the *fi. fa.* occupy, as to the money, the same relation which they had occupied, as to the land. *See Byars vs. Bancroft, Betts & Marshall, p. 34, this vol.*

Was this relation such as to give to the *fi. fa.* a claim to the money of superior dignity to the claim which the mortgage had to the money?

The mortgage was older than the judgment on which the *fi. fa.* was founded; and it is a general rule, that among liens by judgment, and by mortgage, the older is the better.

Are there any special facts in the present case, to take it out of the general rule?

The special facts in this case are these:

1. The mortgagees, as the representatives of Wimpee's partner, the deceased Price, are themselves bound for the *debt* on which the Baker & Wilcox *fi. fa.* is founded: That debt was a debt against Wimpee and his partner, the deceased Price. This being so, ought the representatives of Price to be allowed to take money from a debt, which debt they are themselves bound for?

2. The very mortgage itself is one that was in part, given

Baker & Wilcox vs. Wimpee.

to save the said representatives of Price harmless from all the debts of Wimpee & Price, and therefore, from this debt of Baker & Wilcox; and if the money in question should be applied to the payment of that debt, the object of the mortgage would *pro tanto*, be accomplished: Is it not right then, that the money should be applied to the payment of the debt?

There are two or three things which, for the present are, we think, sufficient to turn aside the force of this double fact.

1st. The Baker & Wilcox *fi. fa.* is one which is against Wimpee *alone*, though it is against him as surviving partner of Wimpee & Price; therefore, it does not *bind* the administrators of *Price:* they, consequently, have still the right to defend themselves against the debt which the *fi. fa.* represents. And to apply this money to the payment of the *fi. fa.*, would be to deprive them of that right, for it would be paying the *fi. fa.* with their money, money made theirs by the mortgage and the subsequent agreement.

2d. The mortgage is one that was made in part, to secure the mortgagees against *all* the debts owed by Wimpee & Price. Therefore, every one of those debts has as good a claim on this money, as this one due to Baker & Wilcox has; especially is this true, inasmuch as there is nothing to show, that the estate of Price, the deceased partner, is solvent. But those debts in all, amount to greatly more than the amount of the money, and there is nothing to show what their precise amount is. Therefore it is impossible to tell what is the share of the money that this Baker & Wilcox debt ought to take.

Besides, the holders of the debts other than this of Baker & Wilcox, are not parties to this proceeding, and they have the right to dispute the validity of the Baker & Wilcox *fi. fa.*

And in so complicated a case, there may be other things not occurring to us that ought to prevent a summary order

for this money, to be first applied to the payment of the Baker & Wilcox *fi. fa.*

[2.] We therefore think, that the Court below was right in refusing the rule absolute.

But this is by no means saying, that the fund is wholly beyond the reach of the Baker & Wilcox *fi. fa.* We do not say, that that *fi. fa.* might not reach the fund by means of a bill in equity.

Judgment affirmed.